# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| D. BARRY KEENAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10-cv-2990 |
| v. | ) | |
| | ) | |
| WORLD BRIDGE PARTNERS, LLC, | ) | **JURY DEMAND** |
| and SALLY SALZER, individually | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Desmond Barry Keenan ("Plaintiff" or "Keenan"), by and through its undersigned attorneys, brings this Complaint against Defendants World Bridge Partners, LLC ("World Bridge") and Sally Salzer, individually ("Salzer") (collectively "Defendants"), and alleges as follows:

## NATURE OF ACTION

1. This is a civil action brought against Defendants for fraud and conspiracy to defraud.

2. On or about June 23, 2016, Salzer of World Bridge reached out to Keenan via Linked In to recruit Keenan for a Chief Technology Officer position with CliniFlow Technologies, LLC ("CliniFlow").

3. Salzer's long-time friend, Marc Lawrence, the President and CEO of CliniFlow and its predecessor/affiliate Downing Partners, LLC, retained Salzer and World Bridge to recruit executives for both companies.

4. Downing Partners and CliniFlow used the same fraudulent scheme to recruit executives – the companies required incoming executives to invest $200,000-$250,000 as a condition of employment, but these "investments" were actually part of a Ponzi scheme used to fund failing businesses.

5. Defendants knew that Downing Partners and CliniFlow required executive recruits to invest as a condition of employment and actively solicited Keenan and others to work for Downing Partners or CliniFlow and aided efforts to get Keenan to invest in CliniFlow.

6. Before recruiting Keenan, Defendants knew that Downing Partners and Lawrence, along with others, were sued in the United States District Court for the Western District of Pennsylvania based on a fraudulent scheme in which the plaintiff was required to invest $250,000 as a condition of employment with a company that had failed to pay its employees or vendors for months.

7. Defendants failed to disclose that Lawrence and Downing Partners were implicated in a fraudulent recruitment scheme and had been sued by another recruited executive for their wrongdoing.

8. Lawrence and others continued the same fraudulent scheme at CliniFlow, and Defendants knew that CliniFlow was requiring that Keenan invest $200,000 as a condition of employment.

9. This action for fraud and conspiracy to defraud claims Keenan's rights to recover his $200,000 investment into CliniFlow, and punitive damages.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a).

11. Keenan is an individual citizen and resident of Stevenson Ranch, California.

12. World Bridge is a limited liability company organized under the laws of Illinois, with its principal place of business in Northbrook, Illinois. Upon information and belief, none of World Bridge's members are residents of California.

13. Salzer is an individual citizen and resident of Illinois.

14. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) and (c)(2), because the lawsuit involves actions that took place in the Northern District of Illinois.

## FACTS

16. Defendants recruited Keenan for a Chief Technology Officer position at CliniFlow. On or about June 23, 2016, Defendants initiated contact through Linked In.

17. After Defendants connected with Keenan via Linked In, Defendants provided Keenan with a "CliniFlow CTO Description" document. (Exhibit A hereto.) According to this document, "CliniFlow Technologies, LLC ("CFT") is an operating company comprised of multiple early stage healthcare portfolio companies focused on commercializing the delivery of innovative technological solutions for high-impact healthcare problems. Their current portfolio of companies includes 3si Systems, Vox MediData, MedRobotics and several pending new acquisitions." (*Id*.) CliniFlow was supposedly involved in the development and sale of certain technologies in the medical device space.

18. On or about June 29, 2016, Keenan had an initial call with Salzer, who is the Managing Partner of World Bridge. During this phone call, Salzer explained that the position would require an investment of $200,000. Salzer added that CliniFlow had vehicles to enable the investment through Equity Trust. As part of Salzer's pitch on behalf of CliniFlow, she told Keenan

that one of CliniFlow's portfolio companies was going to be sold that year, so Keenan would make an immediate return on his investment.

19. On or about July 6, 2016, Keenan participated in a telephone interview with Lawrence. During this interview, Lawrence represented that the position would require an investment of $200,000, but that one of the portfolio companies was going to be sold that year, so Keenan would make an immediate return on his investment. Lawrence further stated that Piper Jaffrey may acquire CliniFlow.

20. As part of Keenan's recruitment, he was promised a salary, expense reimbursement, a bonus, and a health care stipend.

21. On July 21, 2016, Keenan met with Lawrence and Salzer in Chicago, Illinois at the Hilton Hotel at O'Hare Airport. During this meeting, Salzer and Lawrence discussed their common friends from years ago and made clear to Keenan that they had known each other for a long time.

22. On July 22, 2016, Lawrence emailed Keenan with a copy to Salzer offering Keenan the position of Chief Technology Officer. Lawrence attached to this email a revised offer letter from CliniFlow. In addition, Lawrence sent Keenan a CliniFlow Technologies Private Placement Memorandum, a Subscription Agreement, and documentation and instructions for Keenan to create an account at Equity Trust for the purpose of investing $200,000 into CliniFlow.

23. On July 24, 2016, Keenan sent Lawrence, with a copy to Salzer, his acceptance of the offer letter.

24. On July 27, 2016, Keenan resigned from his prior employer.

25. On August 8, 2016, Keenan finalized his investment of $200,000 into CliniFlow by withdrawing funds from his retirement account and transferring to an account at Equity Trust that he created along with Lawrence of CliniFlow for the purpose of making this investment.

4

26. On August 15, 2016, Keenan started his employment at CliniFlow. By September 2016, Keenan began to see problems. For a payroll cycle on September 1, 2016, other employees were not paid their full salary, and Lawrence conducted a group call to explain the shortfall. By September 29, 2016, CliniFlow made no salary payment to Keenan.

27. Downing Partners, CliniFlow, Lawrence, and Defendants participated in an ongoing recruitment scheme. CliniFlow is a successor-in-interest to Downing Partners. Defendants recruited executives for Downing Partners and subsequently other executives, including Keenan, for CliniFlow. Defendants, Lawrence, and others engaged in an employment process that was a scheme intended solely to entice new employee-investors, knowing that their money would be redirected to unstated purposes that would not benefit the company into which the money was invested.

28. Downing Partners, CliniFlow, and Lawrence, among others, indisputably created and implemented the unlawful recruitment scheme. Lawrence and David Wagner were the principals involved in these companies and the fraudulent scheme. Lawrence and Wagner formed a series of companies dating back to at least 2014, which engaged in this Ponzi scheme. These companies include: Downing Partners, LLC, Downing Acquisition Partners, LLC, Downing Investment Partners, LLC, (collectively "Downing Partners") and CliniFlow.

29. Downing Partners and CliniFlow, through Lawrence, engaged World Bridge, through Salzer, to assist them with the recruitment scheme. Salzer had worked with Lawrence for many years.

30. As of no later than March 7, 2016, Defendants were directly informed that Downing Partners and related companies and individuals had been sued by an executive (Scott Lehigh) who had been recruited through the same fraudulent scheme that required him to invest $250,000 as a

condition of employment. During the spring of 2016, Defendants were recruiting William Koch to work for Downing Partners or a related company. On March 7, 2016, William Koch emailed Salzer and Lawrence a link to a lawsuit that had been filed by Lehigh who alleged the fraudulent recruitment scheme. (Exhibit B hereto.) In this lawsuit that was filed in the United States District Court for the Western District of Pennsylvania, Case No. 2:15-cv-01240-AJS, the plaintiff was required to invest $250,000 as a condition of employment, and upon starting employment discovered that the company was not paying its employees and vendors.

31. Prior to Keenan's recruitment, Downing Partners and/or related companies, Lawrence, and others, were sued or being sued by no less than seven former employees alleging that they all invested into the company with a promise of salary, but were not paid their salaries and did not receive a return of their investments. These lawsuits were filed in 2015 and January 2016, and include the aforementioned case filed in federal court in Pennsylvania which was directly provided to Defendants by Mr. Koch in his email dated March 7, 2016.

32. Lawrence and his colleagues used the same fraudulent investment scheme for many years and simply formed new companies, such as Downing Partners and CliniFlow.

33. Lawrence and Salzer knew each other for many years before Defendants were engaged to recruit for Downing Partners and CliniFlow.

34. At the time that Defendants were recruiting Keenan to work for CliniFlow, Defendants had actual, prior knowledge that Downing Partners, Lawrence, and other parties had been sued for a fraudulent recruitment scheme. Defendants knew that the same principals who ran Downing Partners and related companies were the exact same persons running CliniFlow. Defendants knew that the fraudulent recruitment scheme described in one or more prior lawsuits was the same as the proposal that Defendants and CliniFlow were making to Keenan.

6

35. Lawrence worked with CliniFlow or its predecessor affiliated companies since October 2014. Lawrence was President and Chief Operating Officer of Downing Health Technologies, LLC, which became 3si in 2015. In 2016, Lawrence became the President and CEO of Downing Acquisition Partners, LLC, and then CliniFlow.

36. Throughout 2016, Lawrence recruited numerous executives, including Keenan, to become investors/employees of DAP, DIP, and/or CliniFlow.

37. Prior to recruiting Keenan, Lawrence knew that DIP, DP, 3si and Vox MediData failed to pay current and former employees' salaries, expenses and return on their investments. As early as June 2015, approximately one year prior to Keenan's recruitment, Lawrence knew that employees were not being paid.

38. These companies did not sell products or earn revenues from legitimate operations. Instead, the companies relied on recruiting new employees and their mandatory investments in order to fund operations.

39. Wagner paid himself, his wife (who had no role at any of the companies), and/or his family trust in excess of $1,200,000 from Downing Partners' accounts.

40. In 2014, Downing Partners had a loss of $5,249,593.00.

41. None of the foregoing facts were disclosed to Keenan during his recruitment or prior to his employment/investment.

42. Rather, during July 2016, Lawrence provided Keenan with a Confidential Private Offering Memorandum dated May 31, 2016, which stated that "[t]he Company is not presently a party to any material litigation, nor to the knowledge of Management is any litigation threatened against the Company, which may materially affect the business of the Company or its assets." (Exhibit C hereto.)

43. The aforementioned representations in the Offering Memorandum regarding pending litigation were false. There were at least five lawsuits pending against the Company (DIP and/or CliniFlow) and/or their assets (3si and Vox MediData) prior to March 7, 2016.

44. Lawrence was individually named as a defendant in one such lawsuit filed on January 20, 2016. In that case, the plaintiff alleged that the defendant companies and their principals were operating a Ponzi Scheme and that Lawrence actively covered up their inability to pay employees. Additionally, the plaintiff alleged that Lawrence personally recruited him based on conversations and face-to-face meetings in which Lawrence completely misled him. Lawrence got this plaintiff to invest $250,000 into the business, and when the plaintiff started his employment the company missed his first salary payment. This plaintiff discovered that the only time he and other employees were paid was when a new hire started work and the investment funds cleared.

45. On May 31, 2016, another lawsuit was filed in federal court in New York against the companies, Lawrence and others alleging that the defendants were running a Ponzi Scheme.

46. Despite these lawsuits, indisputable facts and Lawrence being individually named, he worked with Defendants to recruit Keenan, and no one disclosed any of the foregoing to Keenan. At the time of recruiting Keenan, Defendants knew about at least one of the pending lawsuits which made the same critical allegations regarding the fraudulent recruitment scheme as were made in other lawsuits.

47. Defendants affirmatively represented to Keenan that an investment of $200,000 into CliniFlow would be repaid and earn a profit in a very short period of time.

48. Defendants aided CliniFlow in connection with persuading Keenan to invest $200,000, and Defendants worked with Keenan to facilitate the investment.

49. Defendants never disclosed to Keenan that Downing Partners, related companies, and/or the principals (including Lawrence) had been sued and/or implicated in a fraudulent recruitment scheme.

50. If Defendants had disclosed the foregoing material facts to Keenan, he would not have invested or become an employee of CliniFlow.

## **COUNT I – FRAUD**

51. Plaintiff repeats and realleges paragraphs 1 through 50 as if fully restated herein.

52. Defendants made a misrepresentation and material omission of fact which were false and known to be false by Defendants.

53. Defendants, through Salzer, misrepresented to Keenan that:

   a. his $200,000 investment would be recovered very quickly because one of CliniFlow's portfolio companies was going to be sold during 2016, which would provide Keenan a return on his investment within six months.

   b. CliniFlow and its portfolio companies were legitimate, bona fide, operational businesses.

54. These misrepresentations were false and known to be false by Defendants. CliniFlow did not sell a portfolio company during 2016. CliniFlow had no potential for a sale of a portfolio company during 2016 or otherwise. CliniFlow and its purported portfolio companies did not operate any legitimate, bona fide businesses. There were no developed products or sales.

55. Defendants knew that these misrepresentations were false. Defendants worked with Lawrence, Downing Partners, and CliniFlow for a number of years. Defendants recruited executives to work for Downing Partners and CliniFlow. By no later than March 2016, Defendants knew that Downing Partners and Lawrence had been sued for an illegal recruitment scheme and

9

that they were not paying employees' salaries. Defendants knew that CliniFlow was using the same recruitment scheme as Downing Partners. Defendants knew that CliniFlow was a successor to Downing Partners and that Lawrence was the President (or senior officer) of both companies. Defendants knew, or were reckless in not knowing, that Downing Partners, CliniFlow, and their portfolio companies did not generate sales, revenues, or any profits.

56. On the World Bridge website, it states that it conducts a detailed analysis of its clients. World Bridge "provides immediate, direct, candid communication with clients and candidates at every step."

57. Defendants failed to disclose to Keenan that Downing Partners and Lawrence had been sued in federal court based on a fraudulent recruitment scheme and failure to pay their employees' salaries. Defendants did not disclose to Keenan that CliniFlow and Lawrence were using the same recruitment scheme with him – requiring an investment of $200,000 as a condition of employment – as Downing Partners and Lawrence used with a plaintiff in a pending federal lawsuit.

58. Keenan justifiably relied on the foregoing misrepresentations and material omissions in connection with Defendants' recruitment of him to join CliniFlow and invest $200,000. Salzer knew Lawrence dating back many years and vouched for his character. Defendants had been recruiting for Lawrence, Downing Partners, and CliniFlow for at least a year prior to contacting Keenan. Defendants touted their expertise and detailed analysis of their clients.

59. Defendants never disclosed to Keenan that Downing Partners, related companies, and/or the principals (including Lawrence) had been sued and/or implicated in a fraudulent recruitment scheme. If Defendants had disclosed the foregoing material facts to Keenan, he would not have invested or become an employee of CliniFlow.

60. Keenan suffered damages and loss of no less than $200,000 that he "invested" in CliniFlow upon joining the company.

WHEREFORE, Plaintiff Keenan respectfully requests that this Court enter an order granting judgment in his favor and against Defendants for compensatory and punitive damages, prejudgment and post-judgment interest, attorneys' fees and costs, and such additional relief as this Court deems appropriate.

## **COUNT II – CONSPIRACY TO DEFRAUD**

61. Plaintiff repeats and realleges paragraphs 1 through 50 as if fully restated herein.

62. Defendants worked with Lawrence, CliniFlow, and Downing Partners to recruit executives, including Keenan, for positions at CliniFlow and Downing Partners.

63. During the recruitment process, Defendants and Lawrence told executives, including Keenan, that they must invest $200,000-$250,000 as a condition of employment.

64. Defendants and Lawrence told Keenan that he would receive a return on his investment in a short period of time after joining CliniFlow, because a portfolio company would be sold.

65. CliniFlow and Downing Partners used an unlawful recruitment scheme to induce new employees' investments as a condition of employment. Neither CliniFlow nor Downing Partners were operating a bona fide business with legitimate revenues, sales, or products. CliniFlow and Downing Partners could not pay their employees' salaries and used investments from newly recruited employees to pay salaries and/or other expenses.

66. As of March 2016, Defendants knew that Downing Partners and Lawrence had been sued for fraud based on a recruitment scheme and failure to pay employee salaries, which was the

same recruitment scheme used to recruit Keenan for a Chief Technology Officer position at CliniFlow.

67. Defendants continued recruiting for Lawrence, Downing Partners, and CliniFlow even after finding out about the fraudulent recruitment scheme. Defendants recruited Keenan starting in June 2016 after they knew that Lawrence and Downing Partners had been sued based on the aforementioned fraud. Defendants thus knew, or were reckless in not knowing, that Lawrence, Downing Partners, and CliniFlow were continuing the fraudulent recruitment scheme in connection with Keenan.

68. Defendants aided Lawrence and CliniFlow's efforts to get Keenan to invest $200,000. Defendants told Keenan that CliniFlow would sell a portfolio company that would provide Keenan a positive return on investment as part of the recruitment.

69. Defendants took an active role, along with Lawrence and CliniFlow, facilitating the creation of an account through which Keenan would invest $200,000 into CliniFlow. Salzer and Lawrence repeatedly contacted Keenan about the investment to ensure that it was done as quickly as possible.

70. Keenan invested $200,000 in CliniFlow. Keenan has not received any return on investment and lost the entire $200,000.

71. If Defendants and/or Lawrence/CliniFlow had disclosed prior litigation alleging the fraudulent recruitment scheme or other material facts related to CliniFlow's lack of revenues, sales or profits, Keenan never would have invested in or joined CliniFlow.

WHEREFORE, Plaintiff Keenan respectfully requests that this Court enter an order granting judgment in his favor and against Defendants for compensatory and punitive damages,

prejudgment interest, post-judgment interest, attorneys' fees and costs, and such additional relief as this Court deems appropriate.

| | |
|---|---|
| Dated: May 2, 2019 | Respectfully submitted,<br><br>**W. BARRY KEENAN**<br><br>/s/ Jeffrey E. Crane<br>One of Its Attorneys |

Jeffrey E. Crane
Law Office of Jeffrey E. Crane, LLC
1363 Shermer Road, Suite 222
Northbrook, Illinois 60062
*****************************
105 W. Madison Street, Suite 1500
Chicago, Illinois 60602
847-239-7239 (Telephone)
847-239-7202 (Facsimile)
jeff@jeffcranelaw.com